**United States District Court**
For the Northern District of California

1

2

3

4                      UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    TERCICA, INC.,                              No. C 05-5027  SBA

8              Plaintiff,                        **ORDER**

9              v.                                [Docket Nos. 17, 23, 26, 31]

10   INSMED INCORPORATED,

11             Defendant.

12   _____

13         This matter comes before the Court on Defendant Insmed Incorporated's ("Defendant") Motion

14   to Dismiss the First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(2),

15   12(b)(3), and 12(b)(6) and to Strike Portions of the First Amended Complaint Pursuant to Federal Rule

16   of Civil Procedure 12(f); Plaintiff Tercica, Inc.'s ("Plaintiff") Request for Judicial Notice; Defendant's

17   Opposition and Objections to Plaintiff's Request for Judicial Notice and Evidentiary Objections; and

18   Defendant's Objections to Plaintiff's Two Supplemental Declarations.  Having read and considered the

19   arguments presented by the parties in the papers submitted to the Court, the Court finds this matter

20   appropriate for resolution without a hearing.  The Court hereby GRANTS Defendant's Motion to

21   Dismiss for lack of personal jurisdiction and DISMISSES the First Amended Complaint without leave

22   to amend.  The Court also GRANTS IN PART AND DENIES IN PART Plaintiff's Request for Judicial

23   Notice, SUSTAINS IN PART AND OVERRULES IN PART Defendant's Opposition and Objections

24   to Plaintiff's Request for Judicial Notice and Evidentiary Objections, and SUSTAINS IN PART AND

25   OVERRULES IN PART Defendant's Objections to Plaintiff's Two Supplemental Declarations.

26

27

28

**United States District Court**
For the Northern District of California

**BACKGROUND**

A.    **Factual Background[1]**

Plaintiff Tercica, Inc. ("Plaintiff" or "Tercica") and Defendant Insmed Incorporated ("Defendant" or "Insmed") are competitors in the drug market for the treatment of growth failure in children.  FAC at ¶ 1.

At some point prior to the commencement of this litigation, Tercica acquired the exclusive rights to develop, commercialize, and manufacture Increlex™ ("Increlex") from Genentech, Inc.  FAC at ¶ 11. Increlex is composed of recombinant insulin-like growth factor-1 ("IGF-1") and is sometimes referred to as "free IGF" or "free rhIGF."  *Id.* at ¶ 14.  On August 30, 2005, Increlex received approval from the Food and Drug Administration ("FDA") as an "orphan-designated drug" for the long-term treatment of growth failure in children with severe Primary insulin-like growth factor-1 deficiency ("Primary IGFD") or children with growth hormone gene deletion who have developed neutralizing antibodies to growth hormone.  *Id.*  Increlex is the only FDA approved free rhGIF or rhIGF-1 product.  *Id.* at ¶ 22.  FDA approval was granted despite the fact that Insmed had filed a Citizen's Petition with the FDA requesting that the FDA deny Tercica's new drug application on the grounds that Increlex was unsafe.  *Id.* at ¶ 23. The FDA specifically found that Insmed's arguments were unpersuasive and that Tercica had "adequately demonstrated that Increlex is safe and effective under the conditions of use described in its labeling."  *Id.* at ¶ 23.  After Tercica received FDA approval, it began commercializing Increlex.  *Id.* at ¶ 12.  Since that time, at least one physician has prescribed Increlex.  *Id.*

On September 27, 2005, the FDA issued Insmed an "Approvable Letter" pursuant to 21 C.F.R. 314.110 with respect to Insmed's drug, iPlex™ ("iPlex").  *Id.* at ¶ 15.  iPlex is composed of recombinant human IGF-1 and IGF binding protein 3 (rhIGF-I/rhIGFBP-3 complex) and is sometimes referred to as "bound IGF," the "complex," or the "combination."  *Id.* at ¶ 14.  The FDA set December 12, 2005 as the action date on the iPlex new drug application ("NDA").  *Id.* at ¶ 15.

On September 28, 2005, during an investor conference call, Insmed stated that "in our matched comparison with that IGF-1 study, we have seen about a two-fold higher incidence of serious adverse

---

[1]Except as otherwise noted, the following facts are taken from the First Amended Complaint ("FAC").

United States District Court

For the Northern District of California

1    events with the free IGF-1 treatment that we have with iPlex . . . ."  FAC at ¶ 24(A).   This statement

2    was later made available as a "webcast" on Insmed's website.  *Id.*

3        Also on September 28, 2005, Lazard Capital Markets published an article stating that "[d]uring

4    a call th[at] morning, Insmed's chief scientific officer spoke of a twofold increase in serious adverse

5    events with free IGF01 (essentially Increlex) versus iPlex and expects a press release on the iPlex data

6    in the next few days detailing results from an oral presentation given at The Joint Endocrine

7    Society/Lawson Wilkins Pediatric Endocrinology Society (ESPE/LWPES) meeting last weekend in

8    Lyon, France."  *Id.* at Ex. 4.

9        In a September 29, 2005 press release, Insmed further stated:

10            A matched safety comparison was performed on this [iPlex] study with a
             similar, prospectively-designed, published clinical study of free rhIGF-1
11            (manufactured by Pharmacia Inc.) in children with Severe Primary IGF-1
             deficiency.  A two-fold higher incidence of serious adverse events (SAE's)
12            occurred in the free IGF-1 study as compared with the SomatoKine study over
             a similar time frame.
13
     *Id.* at ¶ 24(G).  Additionally, the company stated that iPlex had "demonstrated a superior safety profile
14
     in children with Severe Primary IGF-1 deficiency, especially regarding the number of hypoglycemic
15
     events and the severity of those events."  *Id.* at ¶ 24(H).
16
17        On October 1, 2005, an article was published in the *Richmond Times Dispatch* stating that

18    "Insmed had fought to block approval of Tercica['s] competing drug, Increlex, which is identical to a

19    natural hormone produced by the body that is used in growth and metabolism."  *Id.* at Ex. 5.  The article

      further reported that "unlike Tercica, Insmed has bound the hormone to protein, which the company says
20
      is safer and will keep the drug in the blood longer."  *Id.*
21
22        On October 19, 2005, Insmed's Chief Business Officer, Phillip Young ("Young"), attended a BIO

23    InvestorForum in San Francisco, California.  *Id.* at ¶ 19; Allan Decl. at ¶ 15.  During the conference,

      Young displayed a table that compared iPlex with free IGF and indicated that free IGF had no "Safety
24
      Profile."  *Id.* at ¶¶ 18, 19.  Insmed also stated that "physiological replacement of IGF-1 requires BP-3
25
26    for safe and effective administration" and that "if you are going to replace IGF, it requires [IGF]BP-III

27    for the safe administration of IGF."  *Id.* at ¶¶ 24(C), (E).  Further, the company stated that "[t]here have

28    been companies over the last 20 years that have worked to develop IGF therapy . . . But the problem that

3

all these companies are running into is that there has been a significant negative side effect profile associated with administering free IGF.  We believe we can mitigate that and we have shown that we can mitigate that by the complex of IFG-I and [IGF]BP-II together."  *Id.* at ¶ 24(D).

On November 7, 2005, Young participated in a teleconference at the Rodman & Renshaw 7th Annual Healthcare Conference.  *Id.* at ¶ 17.  During the conference, Young displayed the same chart comparing iPlex with free IGF.  *Id.* at ¶ 18.  Additionally, Young stated that Insmed had "discovered" that "physiological replacement of IGF-1 requires BP-3 for safe and effective administration."  *Id.* at ¶ 20(A).  Young further stated that "there has been some consistently observable side effects associated with IGF as a single protein in administration that had not been commonly seen or seen as frequently with iPlex, the complex."  *Id.* at ¶ 20(B).  Young also presented a slide, which stated  that "[s]everal companies have attempted to develop an IGF-1 Therapy, [including] . . . Genentech [and] Tercica . . . Previous IGF-1 clinical programs all demonstrate an unacceptable safety profile."  *Id.* at ¶ 21.

On November 29, 2005, Young attended the Lazard Capital investor conference and again presented the chart comparing iPlex with free IGF.  *Id.* at ¶ 19.  During that investor conference, Insmed explained the import of the chart as follows:

> This is a graph, which demonstrates the differences when iPlex, IGF/BP3 complex is administered to diabetic patients.  Now this is not a head to head study.  This is just designed to optically give you an impression of the benefit of delivering IGF therapy via iPlex or the combination of IGF and BP3.  As you can see the well-known side effects for [free]-IGF documented in studies from numerous companies, peripheral edema, facial edema, jaw pain and [arthrelgia], are far more prevalent when IGF is delivered as a single protein or [*sic*] [than] when IGF is delivered as a complex as we do with iPlex.

*Id.* at ¶ 24(B).  Insmed further stated that "previous studies [of] [free]-IGF or IGF by itself the clinical programs have demonstrated severe shortfalls in the safety profile.  We believe that contributing BP3 and IGF together allows for better presentation of IGF in a very safe environment for delivering it once a day."  *Id.* at ¶ 24(F).  Additionally, Insmed stated that "we believe we have a safety profile that is superior to free IGF."  *Id.* at ¶ 24(I).

On December 12, 2005, Insmed announced that the FDA had approved iPLex.  *Id.* at ¶ 29.  On December 13, 2005, during a call with investors, which was later made available through the company's website, Insmed's officers declared: "[T]he major difference here is th[e] fact that our drug can be given

4

United States District Court

For the Northern District of California

once a day and we don't have to specifically time it around food intake." *Id.* at ¶ 29.  The company

further stated that "[o]nce a day without meal restrictions in a very important component to this product

[iPlex]."  *Id.*  Despite these representations, the iPlex Patient Information sheet instructs parents to

"[s]kip your child's dose of IPLEX™ if your child cannot or will not eat for any reason at the time of

the injections . . . It is important that your child eat well and not skip meals while taking IPLEX™." *Id.*

at ¶ 29, Ex. 1.  Similarly, the Package Insert warns that:

> Patients and/or other caregivers should be instructed in the safe administration
> of IPLEX™.  Because of the possibility of hypoglycemia, patients using
> IPLEX™ should be on a regular, balanced diet.  IPLEX™ should be
> administered at the same time every day. IPLEX™ should not be administered
> if the patient cannot or will not eat or when a meal is omitted.

*Id.* at ¶ 29, Ex. 2.

The Package insert also warns that "[e]fficacy beyond one year of treatment has not been

established." *Id.* at ¶ 30, Ex. 2.  Nevertheless, Insmed's President and CEO Geoffrey Allan has stated

that Increlex "is a ***long term*** treatment for growth." *Id.* at ¶ 30 (emphasis added).

**B.** **Jurisdictional Allegations**

Tercica is a Delaware corporation with its principle place of business in Brisbane, California.

FAC at  ¶ 5.  Insmed is a Virginia corporation with its principle place of business in Glen Allen,

Virginia.  FAC at ¶ 6.  Insmed has approximately 80 employees, most of whom are located in Virginia

and Colorado.[3]  Allan Decl.[4] at ¶ 13.  Insmed does not maintain an office in California, does not have

a telephone number in California, does not maintain any records or company files in California, does

not maintain a bank account in California or accept checks drawn on a California bank, and is not

registered to do business here.  Allan Decl. at ¶¶ 8, 11.  Additionally, Insmed has not paid any income

taxes in California, does not own any real property in California, does not have an agent for service of

process in California, and does not have any registered agents living in California.  *Id.*  at ¶¶ 8, 10, 13.

---

[3]Only one employee, Andreas Sommer, Ph.D. ("Sommer"), resides in California.  *Id.* at ¶ 13;
Supp. Allan Decl. at ¶ 3.  Sommer is the former President and Chief Executive Officer of Celtrix
Pharmaceuticals, Inc., Insmed's wholly-owned subsidiary. Supp. Allan Decl. at ¶ 3.  Sommer joined
Insmed as a Principal Scientist in August 2000.  *Id.*  His personal residence is Danville, California.  *Id.*

[4]Geoffrey Allan, Ph.D. ("Allan") is the President and Chief Executive Officer of Insmed.  Allan
Decl. at ¶ 1.  The Allan Declaration was submitted in support of Defendant's Motion to Dismiss.

United States District Court

For the Northern District of California

1   At no time relevant to this action has Insmed either sold iPlex or other products or services to California

2   consumers, or even solicited sales of iPlex or other products or services in California. *Id.* at ¶ 9.

3   Further, Insmed has not endorsed or sponsored any print, television, or radio advertisements in

4   California. *Id.* at ¶ 12. In fact, Insmed maintains a single, passive website. Allan Decl. at ¶ 14.

5           California consumers are unable to purchase products from Insmed, because Insmed does not

6   sell any products anywhere in the United States. *Id.* at ¶ 14. No statement on Insmed's website is

7   directed to, or specifically intended for, California consumers. *Id.* The press releases and investor

8   conference "webcasts" are located in the "Investor Relations" section of Insmed's website, and are

9   directed to existing and prospective investors. *Id.* at ¶ 14.

10          Only two Insmed employees attended the BIO InvestorForum 2005 at the Palace Hotel in San

11  Francisco, California on October 19-20, 2005. *Id.* at ¶ 15. Insmed did not offer any products for sale

12  or make any sales at the BIO InvestorForum 2005. *Id.* In addition to attending the conference, Insmed's

13  Chief Business Officer, Young, gave a twenty-minute presentation on the status of Insmed. *Id.* This

14  presentation was one of more than 190 company presentations given at the conference. *Id.*

15  **C.    Procedural History**

16          On December 6, 2005, Plaintiff Tercica filed a complaint against Defendant Insmed in this Court

17  for alleged violations of: (1) California Business & Professions Code §§ 17500 *et seq.* (False

18  Advertising); (2) California Business & Professions Code §§ 17200 *et seq.* (Unfair Competition); and

19  (3) the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (False Advertising).

20          On December 15, 2006, Plaintiff filed the instant First Amended Complaint. In the First

21  Amended Complaint, Plaintiff asserts the same causes of action against Defendant for: (1) violations

22  of California Business & Professions Code §§ 17500 *et seq.* (False Advertising); (2) violations of

23  California Business & Professions Code §§ 17200 *et seq.* (Unfair Competition); and (3) violations of

24  the Lanham Act, 15 U.S.C. § 1125(a)(1)(B) (False Advertising). In the First Amended Complaint,

25  Tercica contends that the statements Insmed has made regarding the safety of Increx are false,

26  misleading, and deceptive because: (1) Insmed has not conducted a controlled, "head-to-head" clinical

27  trial of the safety of iPlex and Increlex and therefore has no basis to make comparative claims regarding

28  the safety of its own product; (2) Tercica's drug was studied in 71 subjects for a mean duration of 3.9

6

years, whereas Insmed's drug was studied by in only 25 patients for only 9 to 12 months, thus the tests or studies that Insmed has conducted are not reliable and do not support Insmed's statements; (3) iPlex is not, itself, "safe," as a number of undisclosed severe asymptomatic episodes of hypoglycemia, as well as hepatomegaly, adenoid hypertrophy, papilledema, and tonsillar hypertrophy, were observed during the clinical trial.  FAC at ¶¶ 26-28.  Tercica also alleges that Insmed has made false and misleading statements regarding the safety of Increlex because it has represented that Increlex can be taken once a day without food when, in fact,  the Package Insert instructs that Increlex "should not be administered if the patient cannot or will not eat or when a meal is omitted." *Id.* at ¶ 29.  Further, Tercica alleges that Insmed has mislead the public by stating that Increlex is a "long term treatment for growth" when its clinical trial data is only for a limited period of time and the Package Insert specifically states that "[e]fficacy beyond one year of treatment has not been established."  *Id.* at ¶ 30.

The First Amended Complaint states that this Court has personal jurisdiction over Insmed because: (1) "the false and misleading statements made by officers of Insmed in the State of California . . . have caused injury and damage to Tercica, which has its principal place of business in California"; (2) the "deceptive statements made by Insmed's officers outside of California . . . were deliberately calculated to cause, and . . . have caused, injury and damage to Tercica in California" and "were purposefully and voluntarily directed towards California in an effort to entice investors and confuse consumers located in California." FAC at ¶ 9.  The First Amended Complaint also states that venue is proper in this District because "the acts complained of occurred and are occurring in this District, and have caused damage to Tercica in this District." *Id.* at ¶ 10.

On January 13, 2006, Defendant filed the instant Motion to Dismiss the First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) and to Strike Portions of the First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(f).

On February 7, 2006, Plaintiff filed its Opposition to Defendant's Motion to Dismiss and a Request for Judicial Notice.  On the same day, Plaintiff also filed the Declaration of Jennifer Olson (the "Olson Declaration") and the Declaration of Christine Rivera (the "Rivera Declaration").

On February 14, 2006, Defendant filed its Reply, as well as its Objections to the Olson Declaration, the Rivera Declaration, and the Request for Judicial Notice.  Also on February 14, 2006,

1   Plaintiff filed a Supplemental Declaration of Jennifer Olson (the "Supplemental Olson Declaration").

2       On March 13, 2006, Plaintiff filed the Second Supplemental Declaration of Jennifer Olson (the

3   "Second Supplemental Olson Declaration").

4       On March 16, 2006, Defendant filed its Objections to Plaintiff's Two Supplemental Declarations.

5                                    **LEGAL STANDARD**

6   **A.     Personal Jurisdiction**

7       Federal Rule of Civil Procedure 12(b)(2) provides the district court with the authority to dismiss

8   an action for lack of personal jurisdiction. *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280,

9   1285 (9th Cir. 1977). In order to withstand a motion to dismiss for lack of personal jurisdiction in the

10  initial stages of litigation, the plaintiff need only "make, through [his] pleadings and affidavits, a prima

11  facie showing of the jurisdictional facts." *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1071 (9th Cir.

12  2001). "That is, the plaintiff need only demonstrate facts that if true would support jurisdiction over the

13  defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In ruling on a Rule 12(b)(2)

14  motion, the pleadings are to be viewed in a light most favorable to plaintiff and all doubts are to be

15  resolved in his favor. *See Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 n.1 (9th Cir.

16  1995).

17      There are two types of personal jurisdiction: general and specific. *Reebok International, Ltd.*

18  *v. McLaughlin*, 49 F.3d 1387, 1391 (9th Cir.), *cert. denied*, 516 U.S. 908 (1995). The presence of either

19  general or specific jurisdiction will sustain the exercise of personal jurisdiction over a defendant. *Rano*

20  *v. SIPA Press, Inc.*, 987 F.2d 580, 587 (9th Cir. 1993). General jurisdiction exists where it is established

21  that the defendant has "continuous and systematic contacts with the forum that the exercise of

22  jurisdiction does not offend traditional notions of fair play and substantial justice." *Id.* (citation

23  omitted).

24      As to specific jurisdiction, there are two components that must be fulfilled. *Ziegler v. Indian*

25  *River County*, 64 F.3d 470, 473 (9th Cir. 1995). First, the exercise of personal jurisdiction must comport

26  with the forum state's long arm statute. *Id.* Second, the exercise of personal jurisdiction must satisfy

27  the constitutional requirement of due process. *Id.* As to the first inquiry, California's long-arm statute,

28  California Code of Civil Procedure § 410.10, provides for personal jurisdiction to the full extent allowed

**United States District Court**
For the Northern District of California

8

United States District Court

For the Northern District of California

by the requirements of due process. *Id.* As such, "the question is whether exercising jurisdiction over defendants would offend due process." *Id.*

The Ninth Circuit has set forth a three-part test to determine whether a district court's exercise of specific jurisdiction comports with due process:

> (1) the nonresident defendant must do some act or consummate some transaction with the forum or perform some transaction with the forum by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections;
>
> (2) the claim must be one which arises out of or results from the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must be reasonable.

*Ballard*, 65 F.3d at 1498.

The plaintiff bears the burden of meeting this test. *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986). In the event that the plaintiff makes a prima facie showing of purposeful availment and forum related activities, "a presumption of reasonableness" arises, which the defendant bears the burden of overcoming. *Id.*

The purposeful availment test focuses on whether a "defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The focus on the defendant's affirmative conduct is designed to ensure that the defendant is not haled into court as a result of "random, fortuitous or attenuated contacts." *Gray & Co. v. Firstenberg Machinery Co.*, 913 F.2d 758, 760 (9th Cir. 1990). "Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of plaintiff." *Sinatra v. National Enquirer*, 854 F.2d 1191, 1195 (9th Cir. 1988).

**B.     Venue**

In general, 28 U.S.C. § 1391(b) provides that:

> A civil action wherein jurisdiction is not founded solely on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may

1    otherwise be brought.

2    28 U.S.C. § 1391(b).  If an action is filed in the wrong venue, 28 U.S.C. § 1406 provides that the district

3    court may "dismiss, or if it be in the interests of justice, transfer such case to any district or division in

4    which it could have been brought."  28 U.S.C. § 1406.

5    **C.      Dismissal for Failure to State a Claim**

6         Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss should be granted if it

7    appears beyond a reasonable doubt that the plaintiff "can prove no set of facts in support of his claim

8    which would entitle him to relief."  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  For purposes of such

9    a motion, the complaint is construed in a light most favorable to the plaintiff and all properly pleaded

10   factual allegations are taken as true.  *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Everest &*

11   *Jennings, Inc. v. American Motorists Ins. Co.*, 23 F.3d 226, 228 (9th Cir. 1994).   All reasonable

12   inferences are to be drawn in favor of the plaintiff.  *Jacobson v. Hughes Aircraft*, 105 F.3d 1288, 1296

13   (9th Cir. 1997).

14        The court does not accept as true unreasonable inferences or conclusory allegations cast in the

15   form of factual allegations.  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); *See*

16   *Miranda v. Clark County, Nev.*, 279 F.3d 1102, 1106 (9th Cir. 2002) ("[C]onclusory allegations of law

17   and unwarranted inferences will not defeat a motion to dismiss for failure to state a claim."); *Sprewell*

18   *v. Golden State Warriors*, 266 F.3d 1187 (9th Cir. 2001); *McGlinchy v. Shell Chem Co.*, 845 F.2d 802,

19   810 (9th Cir. 1988) ("[C]onclusory allegations without more are insufficient to defeat a motion to

20   dismiss for failure to state a claim.").

21        When a complaint is dismissed for failure to state a claim, "leave to amend should be granted

22   unless the court determines that the allegation of other facts consistent with the challenged pleading

23   could not possibly cure the deficiency."  *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d

24   1393, 1401 (9th Cir. 1986).  The Court should consider factors such as "the presence or absence of

25   undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies by previous amendments,

26   undue prejudice to the opposing party and futility of the proposed amendment."  *Moore v. Kayport*

27   *Package Express*, 885 F.2d 531, 538 (9th Cir. 1989).  Of these factors, prejudice to the opposing party

28   is the most important.  *See Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1387 (9th Cir. 1990) (citing

**United States District Court**
For the Northern District of California

1    *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330-31 (1971)).  Leave to amend is

2    properly denied "where the amendment would be futile."  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d

3    655, 658 (9th Cir. 1992).

4    **D.      Motion to Strike**

5              Under Federal Rule of Civil Procedure 12(f), a court may strike a pleading or any portion of a

6    pleading that is "redundant, impertinent, or scandalous." Fed. R. Civ. P. 12(f).  Motions to strike are

7    disfavored, and the remedy of striking a pleading should generally be used only when necessary to

8    discourage parties from raising allegations that are completely unrelated to the relevant claims and when

9    the interests of justice so require.  *Augustus v. Board of Pub. Instruction*, 306 F.2d 862, 868 (5th

10   Cir.1962).

11                                                      <u>**ANALYSIS**</u>

     **I.      Extra-Pleading Materials**
12
13             As a preliminary matter, before the Court can address the substance of Defendant's Motion to

14   Dismiss and to Strike, the Court must rule on the admissibility of the extra-pleading materials that have

     been submitted to the Court in support of, and in opposition to, the Motion.  When adjudicating a motion
15
16   to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(2), a court may consider evidence

17   outside of the pleadings, including affidavits submitted by the parties.  *Doe v. Unocal Corp.*, 248 F.3d

     915, 922 (9th Cir. 2001).  When adjudicating a motion to dismiss brought pursuant to Federal Rule of
18
19   Civil Procedure 12(b)(6), however, the Court's consideration of extra-pleading materials is more limited.

20   Normally, the Court cannot consider matters outside of the pleading without converting the motion into

     a motion for summary judgment.  *See* Fed. R. Civ. P. 12(b)(6).  The Ninth Circuit has determined,
21
22   however, that a district court may consider documents alleged in a complaint and essential to a plaintiff's

23   allegations. *See Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Steckman v. Hart Brewing, Inc.*

     143 F.3d 1293, 1295 (9th Cir. 1998).  Additionally, a court may take judicial notice of documents on
24
25   which allegations in the complaint *necessarily* rely, even if not expressly referenced in the complaint,

26   provided that the authenticity of those documents is not in dispute.  *In re Autodesk, Inc. Sec. Litig.*, 132

27   F. Supp. 2d 833, 837-38 (N.D. Cal. 2000).

              In support of its Motion, Defendant has submitted: (1) the Declaration of Geoffrey Allan, Ph.D.
28

11

**United States District Court**

For the Northern District of California

United States District Court

For the Northern District of California

1  ("Allan Declaration"); (2) a letter from legal counsel for Insmed to legal counsel for Tercica, dated

2  November 9, 2005 (the "November 9, 2005 Letter"); and (3) the Supplemental Declaration of Geoffrey

3  Allan, Ph.D. ("Supplemental Allan Declaration").  Both the Allan Declaration and the Supplemental

4  Allan Declaration are submitted in support of Defendant's 12(b)(2) motion and therefore may be

5  considered by the Court.  However, the Court notes that Plaintiff has requested that the Court strike the

6  first two sentences of paragraph 3 and the second and third sentences of paragraph 15 of the Allan

7  Declaration as inadmissible hearsay, and Defendant has not opposed this request.  Nevertheless, the

8  Court has not relied on these portions of the Allan Declaration in order to make its jurisdictional

9  determination.  Accordingly, the request to strike is DENIED AS MOOT.

10       The Court has also disregarded the November 9, 2005 Letter attached to the Motion to Dismiss.

11  This letter consists of further attorney argument in support of Defendant's Motion and is not properly

12  considered "evidence."[5]

13       In opposition to Defendant's Motion to Dismiss and to Strike, Plaintiff requests that the Court

14  take judicial notice of the following documents pursuant to Federal Rule of Evidence 201[6]:

15  (1)  Insmed's Form 10-K for the period ending December 31, 2003, filed with the Securities and Exchange Commission ("SEC") on March 12, 2004 (Exhibit 1);

16
17  (2)  Civil Docket for *Genentech, Inc. et al. v. Insmed Incorporated, et al.*, Case No C 04-05429 CW, filed in the U.S. District Court, Northern District of California (Exhibit 2);

18
19  (3)  Insmed's Form S-3, filed with the SEC on February 3, 2006 (Exhibit 3);

20  (4)  Declaration of Kenneth M. Attie M.D. in support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction, filed in *Genentech, Inc. et al. v. Insmed Incorporated, et al.*, Case No C 04-0549 CW, U.S. District Court, Northern District of California (Exhibit 4);

21
22  (5)  Celtrix Pharmaceuticals, Inc.'s 1997 Annual Report (Exhibit 5);

23  (6)  Declaration of Kevin Tully in Support of Insmed Incorporated's Motion to Dismiss the First Amended Complaint or, in the alternative, for Summary Judgment, filed in *Genentech, Inc. et al. v. Insmed Incorporated, et al.*, Case No

24
25
26  [5]Defendant contends that the letter is being submitted to show that Insmed was "warned" that a Lanham Act case would be subject to a motion to dismiss.  However, this is irrelevant to the legal issues that are currently before the Court.

27
28  [6]Defendant objects to Plaintiff's Request for Judicial Notice with respect to Exhibits 4, 6, and 7.

1    C 04-05429 CW, in the U.S. District Court, Northern District of California
     (Exhibit 6);

2

3         (7)    Plaintiff's Opposition to Insmed Incorporated's Motion to Dismiss the First
                 Amended Complaint or, in the alternative, for Summary Judgment, Partial
4                Dismissal or Partial Summary Judgment, filed in *Genentech, Inc. et al. v. Insmed
                 Incorporated, et al.*, Case No C 04-05429 CW, in the U.S. District Court,
                 Northern District of California (Exhibit 7).

5

6        Plaintiff seeks to have Exhibits 1 and 5 admitted to show the relationship between Celtrix and

7    Insmed, in support of its jurisdictional allegations.  The Court may consider these documents for this

8    limited purpose and therefore the Request for Judicial Notice is GRANTED as to Exhibits 1 and 5.

9    Plaintiff also seeks to have Exhibit 2, which is the docket sheet for *Genentech, Inc. et al. v. Insmed*

10   *Incorporated, et al.*, Case No C 04-0549 CW, admitted to support its jurisdictional allegations.  The

11   Court may take judicial notice of this document for its legal effect, which is the fact that Insmed is

12   currently a defendant in an unrelated lawsuit in the Northern District of California.  *See Neilson v. Union*

13   *Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1113 (C.D. Cal. 2003).  Since this is the basis for Plaintiff's

14   Request for Judicial Notice, the Request for Judicial Notice is GRANTED IN PART.  However,

15   Plaintiff seeks to have Exhibits 6 and 7 to the Request for Judicial Notice, which are the Declaration of

16   Kevin Tully and Plaintiff's Opposition to Insmed Incorporated's Motion to Dismiss the First Amended

17   Complaint, both filed in *Genentech, Inc. et al. v. Insmed Incorporated, et al.*, considered for the truth

18   of the matters asserted therein.  However, Rule 201 does not permit the Court to take judicial notice of

19   these documents for the truth of the matters asserted therein.  Accordingly, the Court hereby DENIES

20   Plaintiff's request with respect to Exhibits 6 and 7.

21       Plaintiff also seeks to have the Court consider Exhibit 3, which is Insmed's Form S-3, as part of

22   Tercica's opposition to Defendant's Rule 12(b)(6) motion.  Exhibit 3 is not part of the First Amended

23   Complaint and the First Amended Complaint does not necessarily rely on it.  As such, the Request for

24   Judicial Notice is DENIED.[7]  Similarly, the Court DENIES Plaintiff's Request that the Court take

25   judicial notice of Exhibit 4 in order to prove that Kenneth Attie, Insmed's Chief Medical Officer, was

26   formerly a consultant to Tercica.  This evidence is irrelevant to the Court's determination of the instant

27       [7]To the extent that Plaintiff seeks also to have the Court consider Exhibit 1 for this purpose, *see*
     Opp. at 7, the Request is DENIED.  Exhibit 1 has only been considered to the extent that it pertains to
28   Plaintiff's jurisdictional allegations.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    Motion and is not part of the allegations of the First Amended Complaint. Plaintiff's decision to submit

2    this evidence to the Court was inappropriate and Exhibit 4 has therefore been disregarded.

3        Plaintiff has also submitted: (1) the Rivera Declaration; (2) the Olson Declaration; (3) the

4    Supplemental Olson Declaration; and (4) the Second Supplemental Olson Declaration. Defendant

5    objects to the Court's consideration of any of these filings in connection with Defendant's Rule 12(b)(6)

6    motion. Turning to the Rivera Declaration first, it is quite apparent that paragraph 5 of the Rivera

7    Declaration should not be considered by the Court. This paragraph of the Rivera Declaration lacks

8    foundation, consists entirely of hearsay information supplied by a representative of Tercica, and is, for

9    the most part, intended to bolster the allegations contained in the First Amended Complaint in order to

10   save it from dismissal under Rule 12(b)(6). However, two paragraphs of the Rivera Declaration, *i.e.*

11   paragraphs 3 and 4, do pertain to Plaintiff's jurisdictional allegations. *See, e.g.,* Opp. at 22.

12   Accordingly, Defendant's objection to the Rivera Declaration is SUSTAINED IN PART and

13   OVERRULED IN PART. The Court has considered paragraphs 3 and 4 of the Rivera Declaration for

14   the limited purpose of determining jurisdiction, but has disregarded the remaining allegations contained

15   therein.

16       Defendant's objections to the Olson Declaration, the Supplemental Olson Declaration, and the

17   Second Supplemental Declaration are also SUSTAINED IN PART and OVERRULED IN PART. The

18   Court notes that the following documents are attached to the Olson Declaration: (a) a copy of a January

19   3, 2006 Tercica press release (Exhibit 1); (b) a copy of a December 12, 2005 Insmed press release

20   (Exhibit 2); (c) a copy of the California Secretary of State web page concerning Celtrix (Exhibit 3); (d)

21   a copy of Insmed's March 17, 2005 press release (Exhibit 4); (e) a copy of Insmed's April 20, 2005 press

22   release (Exhibit 5); (f) a copy of a letter dated November 11, 2005 from Kenneth Attie to Sally

23   Radovick, MD (Exhibit 6A); (g) a copy of Insmed slides entitled "rhGF-I/rhGFBP-3" (Exhibit 6B); (h)

24   a copy of Insmed slides entitled "Treatment with rhIGF-I" (Exhibit 6C); (i) a copy of an email dated

25   November 15, 2005 from Sally Radovick to others (Exhibit 6D); (j) a copy of a letter dated January 10,

26   2006 from Kenneth Attie to Leslie Soyka, MD (Exhibit 7); (k) a copy of an Insmed "Corporate Fact

27   Sheet" (Exhibit 8); (l) a copy of a September 19, 2005 Insmed press release (Exhibit 9); (m) a copy of

28   a Yahoo Finance web page showing the stock price range of Insmed stock from August 30, 2005 to

September 1, 2005 (Exhibit 10); (n) a copy of a Yahoo Finance web page showing the stock price range of Tercica stock from December 11, 2005 to December 13, 2005 (Exhibit 11); (o) a copy of a transcript of Insmed's Investor Update Conference Call held on September 28, 2005 (Exhibit 12); (p) a copy of a September 29, 2005 Insmed press release (Exhibit 13); (q) a copy of a transcript from the October 19, 2005 BIO InvestorForum (Exhibit 14); (r) a copy of a June 10, 2005 Insmed press release (Exhibit 14); (s) a copy of a web page from Insmed's website entitled "Product Pipeline" (Exhibit 15); (t) a copy of a September 27, 2005 Insmed press release (Exhibit 16).

Out of all of the documents attached to the Olson Declaration, only Exhibits 3, 4, and 5 pertain to Plaintiff's jurisdictional allegations. Therefore, those documents have been considered by the Court as establishing the following: (1) that Celtrix is a Delaware corporation located in Virginia, registered to do business in California, with an agent for service of process in California; and (2) that Insmed is affiliated with two clinical trials being conducted by the University of California, San Francisco.[8] However, Defendant's objection to the submission of Exhibits 3, 4, and 5 in connection with the Rule 12(b)(6) motion is SUSTAINED as these documents cannot be used to supplement the First Amended Complaint.

Plaintiff seeks to submit Exhibits 2, 8, 9, 10, 11, 15, 16, and 17 in order to introduce new facts that are not part of the First Amended Complaint. This is improper and Defendant's objections are therefore SUSTAINED. Further, Exhibits 1, 7 to the Olson Declaration are documents that were generated *after* the First Amended Complaint were filed and are therefore neither documents referenced in the First Amended Complaint nor documents upon which the First Amended Complaint necessarily relies. As such, they have also been disregarded by the Court and Defendant's objections are therefore SUSTAINED. However, Exhibits 12, 13, and 14 are specifically referenced in the First Amended Complaint and therefore may be considered by the Court. Accordingly, the Court hereby OVERRULES

---

[8] Plaintiff also contends that Exhibits 6A, 6D and 7 may be considered as part of the Court's jurisdictional analysis. However, these letters and emails were not directly sent by Insmed to anyone in California and are therefore irrelevant to the analysis. Since these letters are also not alleged in the First Amended Complaint, they have not been considered by the Court in its determination of the Rule 12(b)(6) motion. Moreover, Plaintiff has not sufficiently authenticated Exhibits 6B and 6C and/or shown that they are the same slides referenced in the First Amended Complaint. As such, the Court SUSTAINS Defendant's objections to Exhibits 6A, 6B, 6C, 6D, and 7.

1    Defendant's objections to Exhibits 12, 13, and 14.

2        Additionally, the Court finds that the document attached to the Supplemental Olson Declaration,

3    which is a copy of a letter from Kenneth Attie to Pinchas Cohen, MD of UCLA, is of questionable

4    relevance, due to the fact that it is dated January 10, 2006 – which, again, post-dates the filing of the

5    First Amended Complaint.  Further, Plaintiff submitted this document *after* Insmed filed its Reply brief

6    and without first seeking leave of Court.  Since Plaintiff submits this document in connection with its

7    Opposition to the Rule 12(b)(2) motion, however, and explains that it did not have access to the

8    document until after its Opposition was filed, the Court has considered the document for the limited

9    purpose of determining personal jurisdiction.  In contrast, the documents attached to the Second

10   Supplemental Olson Declaration are directed toward the merits of Plaintiff's First Amended Complaint

11   and Plaintiff provides *no* valid explanation as to why these documents – which are dated 2003, 2004,

12   and 2005, respectively – were submitted to the Court in such an untimely fashion.  The Court therefore

13   SUSTAINS Defendant's objections to the Second Supplemental Olson Declaration and has declined to

14   consider any of the documents attached to it.

15   **II.    Motion to Dismiss for Lack of Personal Jurisdiction**

16       With respect to the Motion to Dismiss, the Court shall first address Defendant's request to

17   dismiss for lack of personal jurisdiction, which is brought pursuant to Federal Rule of Civil Procedure

18   12(b)(2).  In the First Amended Complaint, Plaintiff contends that the Court has personal jurisdiction

19   over Insmed because: (1) Insmed made several false and misleading statements at an investor forum

20   located in San Francisco, California on October 19, 2005; and (2) Insmed made several other allegedly

21   false and misleading statements outside of California that were calculated to damage Tercica in

22   California.

23       **A.    General Jurisdiction**

24       At the outset, the Court notes that Plaintiff has not met its "high" burden of establishing that this

25   Court has general jurisdiction over Insmed.  *Brand v. Menlove Dodge,* 796 F.2d 1070, 1073 (9th Cir.

26   1986).  First, Plaintiff utterly fails to address the fact that Insmed: (1) is a Virginia corporation; (2) has

27   its principle place of business in Virginia; (3) does not maintain an office in California; (4) does not

28   have a telephone number in California; (5) does not maintain any records or company files in California;

United States District Court
For the Northern District of California

16

(6) does not maintain a bank account in California or accept checks drawn on a California bank; (7) is not registered to do business in California; (8) has not paid any income taxes in California; (9) does not own any real property in California; (10) does not have an agent for service of process in California; (11) does not have any registered agents living in California; (12) has not sold iPlex or any other products or services to California consumers; (13) has not solicited sales of iPlex or other products or services in California; (14) has not endorsed or sponsored any print, television, or radio advertisements in California; and (15) maintains a single, passive[9] website.  *See Bancroft & Masters, Inc. v. Augusta Nat'l Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000) (noting that factors to be taken into consideration in determining whether general jurisdiction exists are whether the defendant makes sales, solicits or engaged in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is incorporated there).

Instead, Plaintiff contends that general jurisdiction is established because: (1) Insmed "consented" to personal jurisdiction in another lawsuit in California; (2) Insmed purportedly mailed advertisements to some California physicians and attended a conference in California; (3) Insmed is participating in two clinical trials in California; and (4) Insmed has a subsidiary registered to do business in California.  Plaintiff does not cite any legal authorities in support of its position that these factors are sufficient to establish a prima facie case of general jurisdiction.  In fact, the relevant authorities make clear that they are not.

In *Core-Vent Corp. v. Nobel Industries AB*, 11 F.3d 1482 (9th Cir. 1993), the Ninth Circuit expressly rejected the argument that personal jurisdiction could be established merely because a defendant had consented to jurisdiction in California in an unrelated case and had filed its own, unrelated lawsuit in California.  *Id.* at 1490.  Indeed, it is clear from *Core-Vent* that unrelated litigation in a forum state is a not controlling factor in, or even relevant to, the general jurisdictional analysis.  *Id.*

Further, the Company's mailings to physicians and the single event of attending a two-day investor conference in San Francisco are not the type of "continuous and systemic" or "substantial"

---

[9] A "passive" website is one that cannot be used to make purchases.  *See Bancroft & Masters, Inc. v. Augusta National Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

activities that support a finding of general jurisdiction.  *See id.* at 1490 (finding that the attendance of five medical conferences in the forum state over the course of four years was insufficient to establish general jurisdiction); *see also Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1331 (9th Cir. 1984) (declining to find general jurisdiction even in light of allegations that defendant had solicited a distributorship agreement in the forum state, had visited the forum state a number of times, had purchased spare parts in the forum state, and had sent letters and telexes, and made telephone calls to the forum state).  This is true even in light of Plaintiff's belated evidence that Insmed mailed a letter directly to a physician in California.[10]  *See* Supp. Olson Decl. at Ex. 18.

Additionally, while Plaintiff places great weight on the fact that Insmed "is conducting two major ongoing clinical trials in this District," Plaintiff does not cite any support for its assertion that this factor supports a finding of general jurisdiction.  In fact, the authorities that have addressed this precise issue have held that the mere participation in a clinical trial in the forum state is not a sufficient basis for finding general jurisdiction.  *See, e.g., Surgical Laser Tech., Inc. v. C.R. Bard, Inc.*, 921 F. Supp. 281 (E.D. Pa. 1996); *Gallant v. Trustees of Columbia University in the City of New York*, 111 F. Supp. 2d 638, 642 (E.D. Pa. 2000).  Further, Insmed has produced evidence that the trials are being conducted by the University of California, San Francisco, not Insmed.  Supp. Allan Decl. at ¶¶ 5, 7.

Plaintiff's reliance on the fact that Insmed's subsidiary, Celtrix, is located in California is equally unavailing.[11]  First and foremost, Plaintiff's statement that Celtrix is a California corporation located in California is flatly contradicted by its *own* evidence showing that Celtrix is a Delaware corporation with its principle place of business in Glen Allen, Virginia.  *See* Olson Decl. at Ex. E.  In fact, according to the Supplemental Allan Declaration, since a short time after its acquisition by Insmed in 2000, Celtrix has owned no real property in California and has neither sold nor solicited sales of iPlex or other

---

[10]The Court does not find this letter to be *relevant* evidence, as the date of the letter is January 2006, which post-dates the filing of the First Amended Complaint.

[11]Plaintiff argues that Celtrix is "central to the iPlex™ drug which is the subject of this lawsuit's allegations" because: (1) Celtrix conducted the original research and development of iPlex, then known as Somatokine, *over six years ago*, and (2) Insmed used the research and test data generated and compiled by Celtrix in its filings with the FDA seeking approval for iPlex.  Plaintiff does not produce any authorities, however, showing that the initial research activities of a wholly-owned subsidiary, which took place over half a decade ago, and which no longer occur in the forum state, constitute *continuous* and systemic contacts with the forum state.

products in California. Supp. Allan Decl. at ¶ 4. Further, Celtrix has paid no income taxes in California since that time, maintains no bank accounts in California, does not conduct any business in California, does not maintain any offices or facilities in California, and does not have any employees located there. *Id.* Additionally, since 2000, Celtrix has not endorsed or sponsored any print, television, or radio advertisements in California. *Id.* Accordingly, even assuming *arguendo* that Plaintiff has established that Celtrix is the alter ego of Insmed, Plaintiff still has not met the heavy burden of establishing general jurisdiction.[12]

**B.     Specific Jurisdiction**

Plaintiff has also failed to establish specific jurisdiction. As the party bearing the burden of proof on specific jurisdiction, Plaintiff must show that each element of the following three-part test is satisfied:

(1)     that Insmed has committed some act or consummated some transaction with the forum or performed some transaction with the forum by which it purposely availed itself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections;

(2)     that the claim is one that arises out of or results from the Insmed's forum-related activities; and

(3)     that the exercise of jurisdiction is reasonable.

*Ballard*, 65 F.3d at 1498. *Haisten*, 784 F.2d at 1397. Only in the event that Plaintiff can make a prima

---

[12]Whether Celtrix is, in fact, the alter ego of Insmed is another element that must be established by Plaintiff before this Court can assume general jurisdiction over Insmed. The Ninth Circuit and the United States Supreme Court have both acknowledged that the mere "existence of a relationship between a parent company and its subsidiaries is not sufficient to establish personal jurisdiction over the parent on the basis of the subsidiary's minimum contacts with the forum." *Doe v. Unocal*, 248 F.3d 915, 925 (9th Cir. 2001); *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 781 n.13 (1984); *Church of Scientology v. Adams*, 584 F.2d 893, 897 (9th Cir. 1978) ("Even in cases where the contacts of a parent or subsidiary corporation are sufficient to subject it to personal jurisdiction, we recognize that the activities of one related corporation are irrelevant to the issue of jurisdiction over the other, so long as a separation between the corporations has been maintained.") (citing *Uston v. Grand Resorts, Inc.*, 564 F.2d 1217, 1218 (9th Cir. 1977)). Indeed, it is well established that the requirements of *International Shoe* must be met as to each defendant over which the forum state is attempting to exercise personal jurisdiction. *Rush v. Savchuk*, 444 U.S. 320, 332 (1980). Here, although Insmed disputes whether Plaintiff can establish that Celtrix is the "alter ego" of Insmed, it appears from Insmed's own evidence that the two corporations are sufficiently merged. For example, Insmed's CEO has stated that Celtrix is a wholly-owned subsidiary of Insmed and is otherwise a "non-functioning corporation." *Id.* at ¶¶ 2, 4. Accordingly, the Court has assumed, for the purposes of this Motion, that Celtrix is the alter ego of Insmed. As such, Plaintiff's request for further discovery on this subject is DENIED AS MOOT.

United States District Court
For the Northern District of California

facie showing of purposeful availment and forum related activities does "a presumption of reasonableness" arise. *Id.*[13]

As to the first element of purposeful availment, Plaintiff must show that the contacts Insmed made with California created a "substantial connection" with the state. In other words, Plaintiff must show that Insmed deliberately engaged in significant activities within California or created "continuing obligations" between it and residents of California, manifestly availing itself of the privilege of conducting business here. *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990). A limited contact with California – if it did not invoke the benefit of acting on or consummating transactions with California – does not suffice. *Casualty Assur. Risk Ins. Brokerage Co. v. Dillon*, 976 F.2d 596, 600 (9th Cir. 1992). As to the second element, the Ninth Circuit typically employs a "but for" test, *i.e.* "a claim arises out of the forum-related activities if it would not have happened but for the forum-related activities." *Omeluk v. Langsten Slip & Batbyggeri A/S*, 52 F.3d 267, 271-72 (9th Cir. 1995).

Here, as to Insmed's relevant forum-related activities, Plaintiff has shown only that Insmed attended a two-day investor conference in San Francisco, California.[14] However, Plaintiff has not

---

[13]In the event that jurisdiction is not established, Plaintiff has requested that the Court stay this Motion and allow Plaintiff to conduct additional discovery. The decision as to whether to allow further discovery is committed to the sound discretion of the district court. *Data Disc, Inc. v. Systems Techn. Assoc., Inc.*, 557 F.2d 1280, 1285 n.1 (9th Cir. 1977). Here, however, the relevant facts are not controverted and Plaintiff has not identified any specific discovery that it believes would aid the Court in its jurisdictional determination. Indeed, as set forth below, the area where Plaintiff is most sorely lacking is any showing that Defendant's activities were purposefully directed toward a Californian entity in a way that was intended to, and did, cause substantial harm to Tercica *in* California. The Court presumes that Plaintiff is the entity with access to the information pertaining to the "brunt of the harm," and therefore DENIES Plaintiff's request for further discovery.

[14]Again, Plaintiff also attempts to rely on the fact that Insmed is affiliated with two clinical trials in California, has an employee who resides in California, is involved in litigation in California, has a subsidiary registered to do business in California, and has purportedly communicated with a physician in California regarding the potential sales of its product. Even construing Plaintiff's evidence in the light most favorable to it, it is clear that these contacts are not related to the instant action. First, Plaintiff's own evidence makes it quite apparent that the clinical trials are not related to this action, which pertains to competition over a drug for the treatment of *growth failure in children*. *See* Olson Decl. at Ex. 4 (clinical trial of IGF-1 for the treatment of prostate cancer); and Ex. 5 (clinical trial of IGF-1 for the treatment of HIV-associated Lipodystrophy). Second, Plaintiff has not alleged or otherwise shown that the sole employee located in California, Sommer, made, or is responsible for, the allegedly false and misleading statements. Third, Plaintiff has not shown that the *Genentech* litigation is sufficiently related to Insmed's purportedly false and/or misleading statements concerning iPlex or Increlex. Fourth, as already discussed, it is also clear from the uncontroverted evidence that Celtrix is no longer located in California and has not been since 2000, which is *five years prior* to the time the allegedly false and

effectively shown that Insmed's twenty minute presentation at the October 19, 2005 BIO InvestorForum was significant or created a "continuing obligation" with any residents of the state of California, particularly since it is undisputed that Defendant was one of 190 companies attending the conference, did not offer any products for sale, and did not make any sales at the conference. *See* Allan Decl. at ¶ 15.

Nor does Plaintiff's case fall within the "effects" test established in *Calder v. Jones*, 465 U.S. 783, 789 (1986).  In *Calder*, the United States Supreme Court held that personal jurisdiction could be established over a non-resident defendant if: (1) the defendant committed an intentional act; (2) expressly aimed at the forum state; (3) causing harm that the defendant knows is likely to be suffered in the forum state.  *Id.*; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004). Here, although Plaintiff meets the first element of the three-part "effects" test, in that the alleged conduct is intentional, Plaintiff has not shown that the allegedly false and misleading statements were expressly aimed at California or have caused harm that Insmed knew was likely to be suffered in California.  *See, e.g., Pharmastem Therapeutics, Inc. v. Cord Blood Registry, Inc.*, 2005 WL 88998 (N.D. Cal. 2005) (Whyte, J.) (declining to find the posting of allegedly false and misleading statements concerning a competitor on a company's website sufficient to satisfy the "express aiming" requirement of *Calder*). First, unlike *Calder*, the purportedly false and misleading statements do not directly refer to Tercica or Tercica's product, Increlex.  *Compare with Calder*, 465 U.S. at 788-89 (noting that the allegedly libelous story concerned the California activities of a California resident, . . . was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California).  Here, while Tercica is a Delaware corporation located in California, Plaintiff has not established that the "brunt" of the harm will be suffered in

_____

misleading statements were made.  Finally, the letter sent by Insmed to a physician at UCLA cannot be considered in establishing personal jurisdiction because it post-dates the allegations in the First Amended Complaint.  *See Farmers Ins. Exch. v. Portage LaPrarie Mut. Ins. Co.*, 907 F.2d 911, 913 (9th Cir. 1990) ("Only contacts occurring prior to the event causing the litigation may be considered"). Moreover, the letter that Plaintiff has produced does not contain any of the allegedly false and misleading statements identified in the First Amended Complaint.  *See* Supp. Olson Decl. at Ex. 18.  In fact, the letter does not mention free IGF *or* Increlex, does not state that iPlex is for "long term treatment," fully discloses the meal restrictions related to iPlex, and mentions certain side effects identified during the clinical trial of iPlex.  *See id.*

United States District Court

For the Northern District of California

California.  *See Core-Vent Corp.*, 11 F.3d at 1486 (noting that a "corporation does not suffer harm in the same sense that an individual does.").  Indeed, Plaintiff's own evidence merely establishes that only 90 of the 500  (or roughly 20%) of the pediatric endocrinologists who treat children afflicted with short stature are located in California.  Rivera Decl. at ¶ 3.  Plaintiff also admits that it estimates that only 15% to 20% of Tercica's expected revenue from Increlex may come from patients and physicians located in California.  *Id.* at ¶ 4.

Plaintiff's reliance on *Tobin v. Astra Pharm. Prods., Inc.*, 993 F.2d 528 (6th Cir. 1993) is also misplaced.  Contrary to Plaintiff's assertion, the Sixth Circuit did not find, in *Tobin*, that "the defendant had purposefully availed itself of the privilege of conducting business in *all* states by seeking FDA approval."  *See* Opp. at 21 (emphasis in original).  Instead, the Sixth Circuit premised its jurisdictional finding on the fact that "during the *same time as* the FDA approval process, [the defendant] *sought out and negotiated* a licensing agreement . . . to distribute the drug *throughout* . . . the United States of America" rather than a distribution agreement related solely to New England or specific states.  *Tobin*, 993 F.2d at 543 (emphasis added) (internal quotations omitted).  Indeed, the Sixth Circuit repeatedly noted that the defendant "could not deny that by licensing Astra to distribute ritodrine in all fifty states it employed the distribution system that brought ritodrine to [the forum state]."  *Id.* at 544.  There is no such evidence here.  In fact, Defendant's February 3, 2006 S-3 filing, which *Plaintiff* introduced as evidence supporting personal jurisdiction, specifically states that – as of the end of 2005 – Insmed had not yet entered into any licensing or distribution agreements or begun any efforts to sell or distribute iPlex and had absolutely "no experience" in that area.  *See* Pl's RJN at Ex. 3 at p. 11.

Finally, while neither party has squarely addressed the "reasonableness" of asserting personal jurisdiction over Insmed in this forum in great detail,[15] it is a factor that the Court must consider.  *See Core-Vent Corp.*, 11 F.3d at 1487; *FDIC v. British-American Ins. Co., Ltd.*, 828 F.2d 1439, 1442 (9th

_____

[15]Defendant states only that it need not address the reasonableness factor when a prima facie case of purposeful availment and forum-related activities has not been made.  Plaintiff, on the other hand, argues in a very cursory fashion that jurisdiction in California is reasonable because: (1) Insmed is already engaged in litigation in California; (2) California has a significant interest in providing legal redress for its residents when California statutes are at issue; and (3) Tercica has a "strong interest" in litigating here.  As set forth above, Plaintiff omits a great deal of the relevant considerations that do not weigh in its favor.

United States District Court

For the Northern District of California

Cir. 1987) (declining to decide if the defendant had purposefully availed itself of the forum state in light of the conclusion that the exercise of jurisdiction would be unreasonable). At the outset, the Court notes that the presumption of reasonableness arises only if Plaintiff makes a prima facie showing of purposeful availment and forum-related activities, which it has not. Further, as to the factors that directly bear on the reasonableness of this forum, these do not, on balance, favor a California forum. The relevant factors to be considered are: (1) the extent of the defendant's purposeful interjection into the forum state affairs; (2) the burden on the defendant of defending in the forum; (3) the forum state's interest in adjudicating the dispute; (4) the most efficient judicial resolution of the controversy; (5) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (6) the existence of an alternative forum.[16]  *Core-Vent Corp.*, 11 F.3d at 1487-88.

Here, the extent of the purposeful interjection into the forum state – *i.e.* the attendance of one investor conference in San Francisco – is extremely attenuated and, as such, does not favor a finding of reasonableness. *See Ins. Co. of North America v. Marina Salina Cruz*, 649 F.2d 1266, 1271 (9th Cir. 1981) ("The smaller the element of purposeful interjection, the less is jurisdiction to be anticipated and the less reasonable is its exercise"). The second element also does not support jurisdiction in California. While the Ninth Circuit has noted that "[t]he burden of litigating in a foreign forum has become less significant as a result of advances in communication and transportation," it has also noted that "the law of personal jurisdiction is asymmetrical" and where, as here, "the defendant has done little to reach out to the forum state, the burden of defending itself in a foreign forum militates against exercising jurisdiction." *FDIC*, 828 F.2d at 1443 (internal quotations omitted).[17]  As to California's interest in adjudicating this lawsuit, this factor neither favors nor weighs against retaining jurisdiction here. Significantly, while Tercica is located in California, it is not a California corporation. *See Core-Vent Corp.*, 11 F.3d at 1489 (finding strong interest due to the fact that plaintiff was a California corporation

---

[16]Another factor that is typically considered – the extent of conflict with the sovereignty of the defendant's state – is not relevant here. *Core-Vent Corp.*, 11 F.3d at 1487-88.

[17]The fact that Defendant is already defending against an unrelated lawsuit filed by Tercica in this state does not make jurisdiction any more reasonable, especially since the instant lawsuit is nearly two years behind the one currently pending before Judge Wilken and Plaintiff has made no showing that the same witnesses or evidence are involved.

23

located in California).  Further, while there are California state law claims asserted in this case, both parties concede that they are largely duplicative of the federal Lanham Act claim.  As to the efficiency of a California forum, it is not clear that the witnesses and evidence are likely to be located in California. In fact, since the First Amended Complaint focuses solely on the activities of Insmed, it may be presumed that most of the relevant witnesses and evidence are located in Virginia, where Insmed is located.  Further, although Tercica states that it has a "strong" interest in litigating here, it has not provided any specific reasons as to why its interests in a California forum are so strong.  Finally, it is beyond dispute that an alternate forum exists in the Eastern District of Virginia.  Accordingly, when all of the relevant factors are considered, the Court concludes that asserting personal jurisdiction over Insmed in California is not reasonable.

For all of the aforementioned reasons, the Court finds that Plaintiff has not established that specific jurisdiction is proper and Defendant's Rule 12(b)(2) motion is therefore GRANTED.  This case is DISMISSED for lack of jurisdiction.

### III.    Motion to Dismiss for Lack of Venue

The Court also alternatively GRANTS Defendant's Rule 12(b)(3) motion.  In general, 28 U.S.C. § 1391(b) provides that venue is proper: (1) in the judicial district where any defendant resides, if all defendants reside in the same state, (2) in the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) in the judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.  28 U.S.C. § 1391(b)(1)-(3).  Here, it is clear that Defendant is located in the Eastern District of Virginia, not California.  Further, Plaintiff has not shown that a substantial part of the events giving rise to its claims occurred in California.  In fact, a great deal of the purportedly false or misleading statements were issued from the Company's headquarters in Virginia or elsewhere outside of California.  *See* FAC at ¶¶ 17, 20, 24.  Accordingly, the case is DISMISSED on this basis as well.

### III.    Rule 12(b)(6) Motion to Dismiss

Further, even if the Court were not granting Defendant's 12(b)(2) and 12(b)(3) motions, the Court finds that the First Amended Complaint should also be DISMISSED for failure to state a claim.

1    Here, Insmed moves to dismiss Plaintiff's First Amended Complaint on the grounds that it fails to state

2    a claim under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and therefore also fails to state a claim under

3    California Business & Professions Code §§ 17500 *et seq.* or California Business & Professions Code

4    §§ 17200 *et seq.*[18]

5         **A.    Lanham Act**

6         Insmed first contends that the First Amended Complaint is deficient under the Lanham Act

7    because: (1) the investor communications identified in the First Amended Complaint do not constitute

8    "commercial advertising or promotion"; and (2) the investor communications were made at a time when

9    the parties were not in commercial competition with each other.  Insmed further contends that Plaintiff

10   lacks standing to sue under the Landham Act because Tercica is not Insmed's competitor and because

11   the two companies were not actually engaged in commercial competition at the time the First Amended

12   Complaint was filed.  Since standing is a jurisdictional issue, it shall be addressed first.

13        **1.    Standing**

14        Section 43(a) of the Lanham Act prohibits the use of false designations of origin, false

15   descriptions, and false representations in the advertising and sale of goods and services.  *Jack Russell*

16   *Terrier Network of Northern California v. AKC*, 407 F.3d 1027, 1036 (9th Cir. 2005).  The express

17   purpose of the Lanham Act is to protect commercial parties against unfair competition.  *Waits v. Frito*

18   *Lay, Inc.*, 978 F.2d 1093, 1108 (9th Cir. 1992).  To establish standing pursuant to the "false advertising"

19   prong of Section 43(a) of the Lanham Act, a plaintiff must allege: (1) a commercial injury based upon

20   a misrepresentation about a product, and (2) that the injury is "competitive" or harmful to the plaintiff's

21   ability to compete with that defendant.  *Jack Russell Terrier Network*, 407 F.3d at 1036.

22        In arguing that Plaintiff does not have standing to pursue a cause of action against it pursuant

23   to the Lanham Act, Defendant primarily relies on the holdings of *PDK Labs., Inc. v. Friendlander*, 103

24   F.3d 1105 (2d Cir. 1997) and *AlphaMed Pharm. Corp. v. Arriva Pharm., Inc.*, 391 F. Supp. 2d 1148

25

26        [18]Other than the fact that Defendant points out that Plaintiff has not identified any law allegedly
27   violated by Insmed in support of its California Business & Professions Code § 17200 claim other than
     a violation of the Lanham Act, neither party separately analyzes the California statutory causes of action
     and it appears that both concede that these cause of action must be dismissed if the Lanham Act claim
28   is dismissed.  *See Denbicare USA, Inc. v. Toys "R" Us, Inc.*, 84 F.3d 1143, 1152-53 (9th Cir. 1996).

*United States District Court*
For the Northern District of California

United States District Court

For the Northern District of California

(S.D. Fla. 2005).  These cases do not support Defendant's position.  For example, while Defendant is correct that *PDK Labs.* and *AlphaMed* are factually analogous to the instant case, in that both cases involve disputes between pharmaceutical companies or individuals over prospective pharmaceutical products, there is a critical difference between the instant case and *PDK Labs.* and *AlphaMed*. Specifically, in *PDK Labs.*, the Second Circuit found that the plaintiff and defendant were not competitors because the defendant's[19] "hopes of eventually obtaining FDA approval and selling a retail weight loss product [we]re too remote . . to confer standing." *PDK Labs.*, 103 F.3d at 112.  Indeed, in *PDK Labs.*, the Second Circuit and the district court both noted that it was "unclear when (if ever) [the defendant would] have an FDA-approved marketable consumer product," given that the defendant, an individual, had admitted that he would need to conduct further studies and product testing that would "cost a minimum of $1,500,000.00." *Id.*  Similarly, in *AlphaMed*, the district court declined to find standing because the plaintiff had merely alleged that it held a patent to the relevant technology but had not alleged that it had sought FDA approval for the pharmaceutical product in question or that product distribution was imminent. *AlphaMed*, 391 F. Supp. 2d at 1162-63.

Critically, neither *PDK Labs.* or *AlphaMed* – or any other case cited by Defendant – foreclose the possibility that a pharmaceutical company plaintiff could have standing to sue under the Lanham Act where, as here, FDA approval has been obtained and product distribution is likely imminent.[20]  In fact, the Second Circuit in *PDK Labs.* expressly acknowledged that standing may be established in such instances. *PDK Labs.*, 103 F.3d at 1112 (noting that a "future 'potential for a commercial or competitive injury' can establish standing").  Accordingly, the Court declines to dismiss the First Amended Complaint for lack of standing.

**2.      Failure to State a Claim**

_____

[19]*PDK* was filed as a declaratory judgment action and thus the relevant inquiry was whether the *defendant* would have standing.

[20]Specifically, Plaintiff has alleged that: (1) Tercica received FDA approval for Increlex on August 30, 2005; (2) after Tercica received FDA approval, it began commercializing Increlex; (3) at least one physician has prescribed Increlex; (4) Insmed received an "Approvable Letter" from the FDA on September 27, 2005, setting December 12, 2005 as the action date for Insmed's new drug application; (5) Insmed made the allegedly false and misleading statements after receiving the "Approvable Letter"; and (6) the FDA approved iPlex on or about December 12, 2005. *See* FAC at ¶¶ 11-16, 29.

United States District Court
For the Northern District of California

However, the Court GRANTS Defendant's Motion to Dismiss based on Defendant's argument that Plaintiff has failed to state a claim.  Defendant moves to dismiss the First Amended Complaint on the grounds that the allegedly false and misleading statements, which consisted solely of communications to existing and potential investors, do not constitute "false advertising" under the Lanham Act.  In the Ninth Circuit, a claim under the Lanham Act requires: (1) that the defendant made a false statement of fact in a commercial advertisement about its own or another's product; (2) that the advertisement actually deceived or had the tendency to deceive a substantial segment of its audience; (3) that the deception was material in that it was likely to influence the purchasing decision; (4) that the defendant caused its falsely advertised goods to enter interstate commerce; and (5) that the plaintiff had been or was likely to be injured as a result of the foregoing either by direct diversion or sales from itself to the defendant or by the lessening of the goodwill which its products enjoy.  *See Rice v. Fox Broadcasting Company*, 330 F.3d 1170, 1180 (9th Cir. 2003).  Although the Lanham Act does not itself define the terms "advertising" or "promotion," the Ninth Circuit has held that allegedly false or misleading statements constitute "advertising" or "promotion" when they are: (1) commercial speech, (2) by a defendant who is in commercial competition with the plaintiff; (3) for the purpose of influencing consumers to buy defendant's goods or services; and (4) sufficiently disseminated to the relevant purchasing public to constitute "advertising" or "promotion" within that industry.  *Coastal Abstract Service, Inc. v. First American Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999).

Here, Defendant is correct that all of the false and misleading statements identified in the First Amended Complaint are alleged to have been made to existing or potential investors of Insmed, not consumers.  For example, the First Amended Complaint alleges that the misrepresentations were communicated between September and December 2005: (1) during "webcast" conferences or teleconferences with potential investors; (2) in "webcast" conference calls with existing Insmed investors; and (3) in a press release posted on the "Investor Relations" section of Insmed's website. There are no allegations, however, that any actual or potential consumer attended any of these

27

United States District Court

For the Northern District of California

conferences or participated in any investor conference calls.[21]  Plaintiff also fails to allege sufficient facts showing that these communications were made "for the purpose of influencing consumers to buy defendant's goods or services."  Additionally, Plaintiff has not alleged any facts showing that any consumers specifically associated Plaintiff's references to "free IGF" with Plaintiff's actual product.[22]  The absence of these relevant allegations makes the First Amended Complaint subject to dismissal under 12(b)(6).  *See, e.g., Sigma Dynamics, Inc. v. E. Piphany, Inc.*, 2004 WL 264 8370 (N.D. Cal. 2004) ("Statements made during an earnings conference call primarily to influence investors that may have an incidental effect of promoting goods to customers are not within the reach of the Lanham Act.").  Accordingly, Defendant's Rule 12(b)(6) motion is also GRANTED.  Due to the Court's rulings on Defendant's Motion to Dismiss, Defendant's Motion to Strike is hereby DENIED AS MOOT.

CONCLUSION

IT IS HEREBY ORDERED THAT Plaintiff's Request for Judicial Notice [Docket No. 23] is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED THAT Defendant's Opposition and Objections to Plaintiff's Request for Judicial Notice and Evidentiary Objections [Docket No. 26] are SUSTAINED IN PART AND OVERRULED IN PART.

IT IS FURTHER ORDERED THAT Defendant's Objections to Plaintiff's Two Supplemental Declarations [Docket No. 31] are SUSTAINED IN PART AND OVERRULED IN PART.

IT IS FURTHER ORDERED THAT Defendant's Motion to Dismiss the First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6) [Docket No. 17] is GRANTED.  The First Amended Complaint is DISMISSED WITHOUT LEAVE TO AMEND.  This case is hereby DISMISSED for lack of personal jurisdiction and the clerk is therefore directed to

---

[21]Although Plaintiff attempts to rectify the deficiencies in the First Amended Complaint by inundating the Court with over 330 pages of extra-pleading materials, Plaintiff cannot escape the fact that the First Amended Complaint does not provide any factual basis for the Court's consideration of these materials.  Thus, Plaintiff's evidentiary submissions only bear on whether Plaintiff could possibly amend the First Amended Complaint in order to meet the required pleading standard; they do not, however, save the First Amended Complaint from dismissal.

[22]Instead, Plaintiff relies on a September 28, 2005 article by Lazard Capital Markets.  Lazard Capital Markets is third party, unrelated to Insmed, and Plaintiff has not presented any authorities showing that Plaintiff can be held liable for such third-party statements.

close the file and to terminate any pending matters, including the June 14, 2006 Case Management Conference, which is VACATED.  Defendant's Motion to Strike Portions of the First Amended Complaint Pursuant to Federal Rule of Civil Procedure 12(f) is DENIED AS MOOT.

IT IS SO ORDERED.

Dated: 6/9/06                                        SAUNDRA BROWN ARMSTRONG
                                                     United States District Judge